282 So.2d 827 (1973)
Gracella G. SIMMONS
v.
BATON ROUGE COCA-COLA BOTTLING COMPANY, LTD. and Employers Commercial Union Insurance Company of America.
No. 9446.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Rehearing Denied September 25, 1973.
*828 Calvin E. Hardin, Jr., Baton Rouge, for appellant.
Sumpter B. Davis, III, Baton Rouge, for appellees.
Before LOTTINGER, ELLIS and CRAIN, JJ.
LOTTINGER, Judge.
Plaintiff, alleging that she became ill as a consequence of consuming part of the contents of a bottle of Tab which contained a decomposed moth, brought this suit for damages against Baton Rouge Coca-Cola Bottling Company, Ltd., the manufacturer and distributor of the beverage, and against its insurer, Employers Commercial Union Insurance Company of America. The Lower Court rendered judgment in favor of plaintiff, and against the defendant, Baton Rouge Coca-Cola Bottling Company, Ltd. in the sum of $200.00 with legal interests thereon from July 21, 1972, until paid, and for all costs of the proceedings, and dismissed the cause against Employers Commercial Union Insurance Company of America. From this judgment Baton Rouge Coca-Cola Bottling Company Ltd. filed a suspensive appeal and plaintiff answered the appeal asking that damages be increased to $500.00.
The facts of this case are that on Wednesday, July 12, 1972, plaintiff purchased a bottle of Tab at the concession stand located on the first floor in the building where she was employed by the Louisiana Department of Corrections, Probations, and Parole. Said bottle of Tab was opened or uncapped by the proprietor of the concession stand, Preston Dugas, a man of limited vision who recognizes his customers by height, walk, and voice. Plaintiff then walked with the bottle from the concession stand to the elevator where she went up to the eleventh floor where her office was located. Plaintiff testified that in route to her office she took a few sips from the bottle of Tab and noticed a peculiar taste, but she further testified that she did not think anything unusual at the time because she was chewing sugarless gum to which she attributed this taste. *829 When she arrived in her office she placed the bottle of Tab on her desk, and not until then did she see a decomposed moth floating in its contents. She testified that she saw the moth because light from the outside shown through the bottle. Soon thereafter she met two of her roommates at the Picadilly Cafeteria for lunch, but she was unable to eat because she was upset. She testified that soon after lunch she became nauseated and vomited three times in the ladies room near her office. The fact that plaintiff was upset upon finding a decomposed moth in the Tab she had partially consumed, that she was unable to eat lunch, and that she vomited in the early afternoon on the same day were all substantiated by testimony of plaintiff's fellow employees and roommate.
Preston Dugas, who sold the bottle of Tab to plaintiff, testified on direct examination:
"Q. Well, I understand; that was back last year. All right. Now, Mr. Dugas, when someone wants to purchase a soft drink such as Tab from you, what is the customary routine that you go through?
A. Well, of course, I'd take it out of the box and I'd open the bottle and I'd hand it to them.
Q. Do you recall doing so in this case?
A. Yes, sir, I do.
Q. And when you reached in and grabbed the Tab from the cooler did you notice anything unusual about the bottle at that time?
A. No, sir, I did not.
Q. Was the top capped properly?
A. It usually is, and I would probably know because they fizz a slight bit if they're opened previously, or if they weren't sealed tight.
Q. Yes sir. Did you open this in accordance with the same way you open any other Tab?
A. Yes sir.
Q. And then did you then tender it to Miss Simmons, the plaintiff?
A. Right, I handed it to the lady.
Q. And you don't know what happened after that, but that she later reported something was wrong with it?
A. Right."
Plaintiff's suit is grounded upon a breach of an implied warranty of quality between defendant and the consumer of the product. The law concerning the proof required in this case is set out in LeBlanc v. Louisiana Coca Cola Bottling Company, Ltd., 221 La. 919, 60 So.2d 873 (1952) and Givens v. Baton Rouge Coca Cola Bottling Company, Ltd., 182 So.2d 532 (La.App. 1st Cir. 1966). These two cases hold that in order to make out a prima facie case, the plaintiff must show, by a preponderance of the evidence that he purchased the beverage in its original container, that the container was in apparent good condition at the time of its acquisition and the time it was opened; that it contained a foreign substance; that it was consumed and that injuries resulted therefrom.
Defendant took the trial judge on a tour of the bottling facilities of the Baton Rouge Coca-Cola Bottling Company, Ltd. and thereafter placed a witness on the stand who testified as to the procedures used in bottling. Defendants primary defense is that it is almost impossible for foreign substance to enter the bottle or its contents before it is capped and made ready for consumption by the public. Defendant would apparently have us increase the burden of proof required by the plaintiff beyond the items cited above because in this particular case the plaintiff did not *830 open the bottle herself. With this we cannot agree inasmuch as the Tab was opened and within seconds handed to plaintiff in its original container.
Under the circumstances of this case, and considering all of the facts, we find that there is ample evidence from which the trial judge could conclude that plaintiff proved her case, and we cannot say that the trial judge was manifestly erroneous in his determination.
Defendant argues that $200.00 is grossly excessive for injuries which resulted in no loss of work, no medical treatment, and which are characterized by the injured party as "momentary unpleasantness." In answering defendant's appeal, plaintiff asks that the quantum for damages be increased to $500.00.
Our jurisprudence is firmly established to the effect that "much discretion" must be left to the Trial Judge or jury in the assessment of damages in torts. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64; and Miller v. Thomas, 258 La. 285, 246 So.2d 16.
From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the "much discretion" accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.
The pertinent codal provision is Civil Code Article 1934, Subd. 3, which provides, in part, as follows:
"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury ..."
As to the award by the Trial Court of $200.00 for damages, we do not find an abuse of his discretion, and affirm same.
For the above and foregoing reasons, the judgment of Trial Court is affirmed at appellant's costs.
Judgment affirmed.